UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

REBECCA METZINGER, M.D.,                    CIVIL ACTION
                                            NUMBER: 19 CV
                                            10614
V.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, THROUGH ITS
SECRETARY                                   SECTION "R"
                                            JUDGE VANCE

<u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS (Rec.doc. 28)</u>

MAY IT PLEASE THE COURT

 **SUMMARY OF THE RESPONSE:**


*The Correct Application of 1) Tucker Act in light of the Supreme Court's 2012 Bormes decision, 2) 28 U.S. Code § 1500 Claims Pending in Other Courts, and 3) the Transfer Act requires denial of the Motion requires rejection and denial of the Motion to Dismiss.*


        The first legal issue before the Court, in connection with the FRCP 12 Motion to Dismiss

filed by Mover, is whether the Tucker Act, 28 U.S.C. §§1346(a)(2) and 1491(a), mandates that the

Federal Court of Claims has exclusive and sole jurisdiction of the pending Equal Pay Act lawsuit

that is before this Court, in Action No. 19 CV10614. Plaintiff submits it does not. The case at bar,

is not a "Tucker Act takings claim." Furthermore, any damages would be paid out of the VA

budget, not the United States Treasury. Lastly, and most important, the Fair Labor Standards Act

("FLSA") and Equal Pay Act of 1963, Title 29 U.S.C. §§ 201-219 ("the EPA") which amends it,

provide their own statutory judicial remedies – under the recent Supreme Court decision in

*Bormes*, the Tucker Act does not apply.

Second, the Court must decide if any other federal statute intervenes to deprive the Federal Court of Claims of jurisdiction over this suit, i.e. 28 U.S. Code § 1500 Claims Pending in Other Courts. Plaintiff submits that it does.

Lastly the Court must decide if the Court is required to transfer, No. 19:cv 10614 to the Federal Court of Claims, under 28 U.S. Code § 1631.*Transfer to cure want of jurisdiction*, instead of dismissing it as Defendant demands, should the Court conclude the <u>Tucker Act</u> applies. Plaintiff submits it must transfer not dismiss.

## Statement of the Case

Pending before the Court is an Equal Pay Act lawsuit (Action No. 19-10614) brought by a Federal Employee. The employee is the Chief of the Ophthalmology Section at the New Orleans Veterans Administration (the VA), and surgeon, Dr. Rebecca Metzinger ("Dr. Metzinger"). The action is against the Secretary of the VA, an agency of the United States. Also pending before the Court is a separate lawsuit, and a Title VII lawsuit (Action No. 20 - 0599) brought by the same employee, against the Secretary.

Dr. Metzinger' s original charges, presented to the VA, alleging violations of Title VII in several areas, including wage discrimination, were brought in June 2017. Her formal written charges were filed with the EEOC on October 5, 2017. This included both claims under EPA, as well as claims under Title VII.[1] The charges were all "accepted" by the Equal Employment

---

[1] See, Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352) (Title VII), as amended, as it appears in volume 42 of the United States Code, beginning at section 2000e. Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. The Civil Rights Act of 1991 (Pub. L. 102-166) (CRA) and the Lily Ledbetter Fair Pay Act of 2009 (Pub. L. 111-2) amend several sections of Title VII. In addition, section 102 of the CRA (which is printed elsewhere in this publication) amends the Revised Statutes by adding a new section following section 1977 (42 U.S.C. 1981), to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII.

Opportunity Commission ("EEOC") investigator and a hearing was scheduled. As expressly detailed in the Original Title VII complaint filed in federal court, (no. 20 CV 0599) and in the charges that were accepted by the Investigator, Dr. Metzinger alleges hostile work environment, reprisal, sex, age and ethnicity discrimination, and wage and compensation discrimination based on sex, and she seeks the statutory remedies allowed under Title VII.

In May 2019, Plaintiff elected to exercise her legal right to take her EPA claims to federal court and she filed a lawsuit in this District under the EPA. Thereafter, the Agency Administrative Judge, ERANIA Ebron, granted the VA's Motion to Dismiss her Title VII action on procedural grounds –namely that the lawsuit (alleging EPA violations) that had been filed in federal court (No. 29-10614) involved the same issues and facts as the EEOC claim, and therefore, the VA contended Dr. Metzinger could no longer pursue the Title VII claims against the agency before the EEOC, but must pursue them in federal court. The EEOC issued a final order and right to sue letter. Doc.1-1 (20 CV 0599).

Plaintiff filed a separate, civil action against the VA (20 CV 0599) pursuant to Title VII, that has now been consolidated in the same section of court as the pending EPA claim. [2] The Title VII lawsuit was served by certified mail on March 28, 2020 after the Counsel for the VA (Asst. U. S. Attorney Smith) advised she could not waive service.

In January of 2020, the parties had requested a formal mediation that would cover both lawsuits (even before the Title VII lawsuit was filed in Federal Court but after the dismissal and right to sue letter), and that mediation has been underway with Judge Lance Africk since the first meeting on January 29, 2020. At all times during mediation it was understood a settlement would

---

[2] Consolidation does not merge the suits, but merely puts them before the same judge based on judicial efficiency doctrine.

settle both separate lawsuits. The most recent conference was cancelled due to Covid 19 concerns and will be rescheduled.

Defendant VA now seeks dismissal of the EPA lawsuit (No. 19 CV 10614), relying on the Tucker Act, claiming that the Court of Claims has exclusive and sole jurisdiction of any action against the United States (meaning the United States Treasury) involving a claim greater than 10,000 and therefore this EPA case must be dismissed. The general jurisdiction of the Court of Claims, described in 28 U.S.C. § 1491, is over claims for just compensation for the taking of private property, refund of federal taxes, military and civilian pay and allowances, and damages for breaches of contracts with the government. The court also possesses jurisdiction over claims for patent and copyright infringement against the United States, as well as over certain suits by Indian tribes. The position of the Court of Claims is that it would not have jurisdiction, if there is a "congressionally created, different, specific or ready avenue for review."

The Tucker Act (March 3, 1887, Ch. 359, 24 Stat. 505, 28 U.S.C. § 1491) is a federal statute of the United States by which the United States government has waived its sovereign immunity with respect to certain lawsuits.

The "Little" Tucker Act was passed in 1887 and is now codified at 28 U.S.C. § 1346(a)(2). It gives the district courts original jurisdiction, concurrent with the Court of Federal Claims, of any civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

Thus, federal district courts were granted jurisdiction, along with the Court of Federal Claims, over "Tucker Act" suits against the federal government for claims under $10,000, [*United States v. Hohri,* 482 U.S. 64 (1987)]. The intent of the Act was to make it easier for Litigants to pursue Tucker Act claims because they are able to utilize the district courts instead of traveling to Washington, D.C. with witnesses and evidence. *Shaw v. Gwatney* 795 F.2d 1351 (8th Cir. 1986).

If the claim is brought in a district court, that court sits as if it were the Court of Federal Claims. There is no jury trial and money judgments are generally the only relief available. If a claim is erroneously brought in federal district court, the court has the authority to transfer the case to the Court of Federal Claims. 28 U.S.C. §1406(c).

The language of the "Little" Tucker Act merely gives district courts concurrent jurisdiction, with the Court of Claims, a*s to Tucker Act claims*, that are under 10,000 dollars.

The VA cites contends that because of Tucker, ALL claims brought against the United States must be brought in the Court of claims if they involve more than 10,000 dollars.

The logical fallacy *post hoc ergo propter hoc*, that all claims **over 10,000 dollars** are therefore Tucker Act claims, exclusively within the Court of Claims jurisdiction, is easy to commit, but not supported in the language of the statute or recent Supreme Court jurisprudence.

Only *Tucker Act claims* are brought exclusively in the court of claims. As an alternative to proceeding directly against the United States pursuant to the Tucker Act, the Supreme Court, in *Burr v. FHA*,[2] stated that Congress may organize "sue and be sued" agencies; such agencies may be sued in any court of otherwise competent jurisdiction as if it were a private litigant, as long as the agency is to pay out the judgment from its own budget, not from the U.S. Treasury. Whether the agency or the Treasury is to pay depends on the congressional intent.

As outlined below, Supreme Court jurisprudence issued in 2012 demonstrates that the Tucker Act does *not* apply in this situation. The dicta in Wilkerson issued twenty seven years earlier by the Fifth Circuit, as explained below is inapposite.

In *Bormes,* the Supreme Court held, the Tucker Act is merely a "stop gap" where the statute authorizing suit against the United States agency does not provide for judicial remedies. For that reason it did not apply to the Fair Credit Reporting Act ("FCRA") for the reason that FCRA sets forth its own judicial remedies.

The FLSA, of which the EPA is part, also sets forth its own "judicial remedies" and it expressly grants jurisdiction to the Federal District Courts.

**Again, as the Supreme Court stated, <u>Tucker </u>is only a stop gap where no judicial remedies have been expressly stated by Congress.**

II) Second, 28 U.S.C. 1500 deprives the Court of Claims of jurisdiction over this EPA case as it presents in these circumstances, by virtue of the fact that the Title VII charges were "in process" and pending before the EEOC, at the time the EPA claim was filed and are now before the Federal District Court.

III) Third, if this Court concludes that the Federal Court of Claims does have sole jurisdiction, then dismissal is still not proper. The Court would be required to transfer the EPA claim (No. 10614) to the court of claims pursuant to the Transfer Act, 28 U.S. Code § 1631.Transfer to cure want of jurisdiction. It may not dismiss, because No. 19-10614 Plaintiff's EPA claim falls within 28 U.S.C. § 1331 and venue is otherwise proper in the District Court under 28 U.S.C. § 1391(e)(1).7. Under the Transfer Act dismissal is not permitted.

**HISTORY AND ELEMENTS OF THE SUITS FILED.**

*The Equal Pay Act Suit:*

The Equal Pay Act  is a federal employment law that prohibits sex-based compensation discrimination and mandates that men and women in the same workplace doing substantially equal jobs be given equal pay.

The EPA is part of the Fair Labor Standards Act of 1938 as amended, which is administered and enforced by the EEOC.

The EPA requires that all persons performing equal work must receive equal pay, unless a difference in pay is justified by a consideration other than gender. See Title 29 U.S.C. § 206(d). The private enforcement provision of the Fair Labor Standards Act (hereinafter "FLSA"), of which the EPA is a part, provides that "an action to recover the liability prescribed … may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *See* Title 29 U.S.C. S 216(b). The term "employer" is defined in the FLSA to include "a public agency," Title 29 U.S.C. § 203(d), which is in turn defined as "the government of a State or political subdivision thereof" and any agency of a State. *See* Title 29 U.S.C. § 203(x). Finally, the term "employee" is defined to include "any individual employed by a State, political subdivision [**3] of a State, or an interstate governmental agency." *See* Title 29 U.S.C. § 203(e)(2)(C).

A district court has jurisdiction over a claim under the Equal Pay Act of 1963 pursuant to Title 29 U.S.C. §§ 206(d) and 216, and pursuant to Title 28 U.S.C. § 1343(4). *Hofmister v. Miss. State Dep't of Health*, 53 F. Supp. 2d 884, 886 (S.D. Miss. 1999)

The EPA's basic structure and operation is "straightforward": the plaintiff first carries the burden of showing that an employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Id. at 195.

To establish a prima facie case under the Equal Pay Act, the plaintiff must show that:

1. she was "doing **substantially equal** work on the job, the performance of which required **substantially equal** skill, effort, and responsibility as the jobs held by members of the opposite sex".
2. "the job was performed under similar working conditions"; and
3. she was "paid at a lower wage than members of the opposite sex."

See *Molden v. United States*, 11 Cl. Ct. 604, 610–11 (1987). 29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). *Cornish v. District of Columbia,* 67 F. Supp. 3d 345, 360-61 (D.D.C. 2014) (citations omitted).

To file an EPA claim, one must either file in court *or* with the EEOC within two years of the compensation practice alleged was unlawful. Filing with the EEOC will not extend time to file a lawsuit.

If the violation is willful, the complainant has three years from the time of the practice to file suit.

"Equal pay" covers not just salary but any form of compensation, including overtime pay, bonuses, profit sharing options, stock options, life insurance and health insurance benefits, travel reimbursements, and vacation and holiday pay.

Once the plaintiff has put forth this prima facie case, the burden shifts to the employer "to show that the [pay] differential is justified under one of the Act's four exceptions." *Corning Glass Works*, 417 U.S. at 195-196. The nature of the work—the skills, effort, responsibilities, and

working conditions—rather than the job title determines whether the jobs will be considered substantially equal.

After this prima facie case is established, the burden of both production and persuasion shift to the employer to show, as an affirmative defense, that the pay differential is due to one of four reasons permitted under the statute, namely a seniority, merit, or production output system, or any differential based on a factor other than sex. *Id.* at 196–97; *Brinkley*, 36 F.3d at 344. "[T]he risk of non-persuasion rests with the employer on the ultimate issue of liability," *Fallon v. Illinois*, 882 F.2d 1206, 1213 (7th Cir. 1989), and accordingly, once the plaintiff raises a prima facie case of pay discrimination, unless the employer can prove that "one or more affirmative defenses are applicable . . . , the plaintiff will prevail." *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018). In an EPA claim, the employer will have the burden of <u>proof</u> (not just a burden of <u>production</u> like in a Title VII claim) to establish its EPA defense (seniority system, merit system, production-quota system, or any factor other than sex). 29 U.S.C. § 206(d)(1).

*The Title VII suit:*

No. 20-CA-0599 is a claim brought solely pursuant to Title VII. Title VII also makes it illegal to discriminate based on sex in pay and benefits. However, Title VII also prohibits discrimination in compensation or other aspects of employment based on race, color, religion, or national origin.

Both statutes prohibit sex discrimination in compensation. But despite the considerable overlap of the two statutes, they are not identical. The Equal Pay Act is more targeted in that it only prohibits sex-based differentials in substantially equal jobs in the same establishment. Title VII's anti-discrimination provisions cover more protected characteristics (race, gender, religion, etc.) than the EPA, which is limited to gender-based differences.

Therefore, not all compensation practices that violate Title VII also violate the Equal Pay Act. On the other hand, the Commission's longstanding Equal Pay Act guidelines state that a practice that violates the Equal Pay Act also will violate Title VII.

Unlike the EPA, no requirement exists under Title VII to prove that the job is substantially equal to that of a higher-paid male employee, nor under Title VII must you work in the same establishment as the male comparator.

The Lilly Ledbetter Fair Pay Act extends the statute of limitations for all discriminatory compensation claims, whether under Equal Pay Act or under Title VII, by clarifying "that a discriminatory compensation decision . . . occurs each time compensation is paid pursuant to the [discriminatory decision]." Pub. L. No. 111-2, 123 Stat. 5 (2009). See, EEOC website.[3]

## APPLICATION OF THE LAW

## I TUCKER ACT DOES NOT APPLY TO THIS EPA CLAIM.

**A. The Fifth Circuit Wilkerson opinion applied the Tucker Act provision (a)(1), as it was an IRS claim. This is not.**
**The law respecting the proper application of provision (a)(2), relied upon by mover, was clarified and superseded by Supreme Court decision in *Bormes*.**

The Defendant Mover relies entirely on the Fifth Circuit opinion in *Wilkerson*. *Wilkerson v. United States*, 67 F.3d 112, 114 (5th Cir. 1995) grew out of the Internal Revenue Service's efforts to collect Robert D. Forsyth's delinquent income taxes. Wilkerson brought claims against the IRS for wrongful levy under 26 U.S.C. § 7426 and § 7433 (for reckless or intentionally wrongful collection activities); wrongful disclosure of her tax return information under 26 U.S.C. § 7431; violation of the Privacy Act, 5 U.S.C. §

---

[3] Compliance Manual Section on Compensation Discrimination: http://www.eeoc.gov/policy/docs/compensation.html and Questions and Answers: Compliance Manual Section on Compensation Discrimination: http://www.eeoc.gov/policy/docs/qanda-compensation.html

552(a); violations of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680; violations of the Administrative Procedure Act 5 U.S.C. §§ 701-706; and violation of her Fifth Amendment rights.

*Wilkerson did not even involve Provision (a)(2) which is the provision that the Mover relies upon in this motion.*

*Wilkerson* directly involved the "Little" Tucker Act, provision, 28 U.S.C. § 1346 (a)(1) related strictly to IRS claims, the current version of which gives concurrent jurisdiction to the Court of Federal Claims and the District Courts "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

Despite the fact that the issue never raised by either party, the Court in dicta commented that the Court of Claims has sole jurisdiction of "claims exceeding 10,000 dollars "against the United States, and where there is exclusive jurisdiction of the Court of claims, the Fifth Circuit will not permit the District Court to maintain jurisdiction, *even though other Circuits differ.*

> For claims that exceed $ 10,000, the Tucker Act grants exclusive jurisdiction to the Court of Claims. 28 U.S.C. § 1491(a); *Amoco Production Co. v. Hodel,* 815 F.2d 352, 358 (5th Cir. 1987), *cert. denied,* 487 U.S. 1234, 108 S. Ct. 2898, 101 L. Ed. 2d 932 (1988). We have consistently refused to allow district courts to adjudicate issues which belong solely to the Court of Claims, even though some other statute conferring jurisdiction would otherwise allow the district court to hear the case. *Amoco Production,* 815 F.2d at 358 (citing *Graham v. Henegar,* 640 F.2d 732, 734-35 & n.6 (5th Cir. 1981))."

> *Wilkerson v. United States*, 67 F.3d 112, 118 (5th Cir. 1995)

It is noteworthy that as *Wilkerson* was an IRS case, any judgment would be paid by the U.S. Treasury. That was in 1985.

Subsequently, in *Parker v. King*, the 11th Circuit, acknowledged the Supreme Court was in fact going in the opposite direction than the Fifth Circuit had—it was holding that many cases against the United States agencies DID NOT involve <u>Tucker</u> Act:

> After the Fifth and Federal Circuits' decisions in *Zumerling* and *Graham,* however, the Supreme Court, at least ostensibly, rejected the notion of exclusive Tucker Act jurisdiction over claims against the government. In *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), the Supreme Court appeared to dispel the notion of the Claims Court's exclusive jurisdiction over Little Tucker Act claims:
>> It is often assumed that the Claims Court has exclusive jurisdiction of Tucker Act claims for more than $10,000. . .. That assumption is not based on any language in the Tucker Act granting such exclusive jurisdiction to the Claims Court. Rather, that Court's jurisdiction is "exclusive" only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court.

*Bowen v. Massachusetts,* 108 S.Ct. at 2740, n. 48 ("The principal question presented by these cases is whether a federal district court has jurisdiction to review a final order of the Secretary of Health and Human Services refusing to reimburse a State for a category of expenditures under its Medicaid program.")

The Eleventh Circuit, in its decision in *Parker v. King*, following its discussion of *Bowen*, then "limited" its own decision, stating: "Today we determine that we have no jurisdiction to hear the merits *of an appeal* based, as we have established, on allegations which derive solely from the Little Tucker Act. Since we have resolved that the district court's jurisdiction over these claims derives solely from the Little Tucker Act, the Federal Circuit must hear this appeal").

Furthermore, since then, the Supreme Court subsequently has given better guidance as to when the Claims Court has sole jurisdiction, and **when it does not.**

In 2012, the Supreme Court in **United States v. Bormes**, 568 U.S. 6 (2012) issued an opinion that reviewed the entire history of the Little Tucker Act and its mid-19th century

predecessor, and the history of the Court of Claims, the Court observed that the purpose of the Little Tucker Act was to provide judicial remedies for claims against the federal government that were authorized by statute but did not provide a method for enforcement.[7] As such, it is purely a "gap-filling" statute.[8]

The Supreme Court held in *Bormes*, that the Little Tucker Act, provides jurisdiction to federal courts for *certain* claims brought against the federal government, "Tucker claims," but did not apply to lawsuits brought against the United States under the Fair Credit Reporting Act (FCRA).[1]

The Supreme Court in *Bormes* stated that the "Tucker Act is displaced . . . when a law assertedly imposing monetary liability on the United States *contains its own judicial remedies*. In that event, the specific remedial scheme establishes the exclusive framework for the liability Congress created under the statute." Id. at 18; see also *King v. United States,* 112 Fed. Cl. 396, 399 (2013) (explaining that "the Tucker Act may not be invoked to provide jurisdiction independently and instead of the terms of a detailed remedial statute." (emphasis adde*d)). See Bormes,* 133 S. Ct. at 18.

The Court characterized the Little Tucker Act as merely "gap-filling."

The Court, ruled that the Little Tucker Act's general provisions do not apply "when another statute itself sets forth the specific conditions by which that statute is to be enforced."

In what was a unanimous opinion, by Justice Scalia, the *Bormes* Court held that whether a suit for damages could be brought against the federal government was a question that only the relevant statute itself could answer. That was an issue the Court left for the Seventh Circuit to

address on remand. The Court directed the lower court to address, on remand, whether the FCRA itself authorized a claim for damages against the government for violating its provisions.

The Court wrote that "[t]o hold otherwise—to permit plaintiffs to remedy the absence of a waiver of sovereign immunity in specific, detailed statutes by pleading general Tucker Act jurisdiction—would transform the sovereign-immunity landscape."

> "    [T]he Supreme Court has recognized that jurisdiction in the [Court of Federal Claims] (or its predecessors) is foreclosed where Congress has prescribed a different, specific avenue for review." King, 112 Fed. Cl. at 399 (citing Bormes, 133 S. Ct. at 18). And Congress, of course, may "precisely define [] the appropriate forum." *Hinck v. United States,* 550 U.S. 501, 507 (2007). When a statute provides a "ready avenue" for assertion of claims, that statute withdraws this court's jurisdiction under the Tucker Act. See Horne, 133 S. Ct at 2063 (determining that the Agricultural Marketing Agreement Act of 1937 ("AMAA"), which vests the "District Courts of the United States" with jurisdiction, "withdraws Tucker Act jurisdiction" in the United States Court of Federal Claims).

Therefore, the Tucker Act is superseded when a statute authorizing a claim for damages set forth its own specific enforcement procedures, as did the FCRA.

Otherwise, the Court believed, the Little Tucker Act would broadly impose its own rules – for example a waiver of sovereign immunity--  under detailed statutes that did not provide for it.

*Wilkerson's dicta*, on which Mover relies, was issued twenty-seven years BEFORE the Supreme Court cleared up the issue in *Bormes*.

In *Sammons v. United States*, 860 F.3d 296 (5th Cir. 2017) perhaps in light of the direction the Supreme Court had taken, the Fifth Circuit held that the Court of Claims has sole jurisdiction of "Tucker Act claims" involving a "takings" under the Fifth Amendment because of the sovereign immunity issues, and Congress can constitutionally require such cases to be heard in an Article I court, as it did in the Tucker Act.

A IN Line with the Supreme Court Decision in Bromes, as the FLSA and EPA provide their own judicial remedies, Article III Jurisdiction applies:

The *Bormes* case involved a claim against FCRA.

The *Wilkerson* decision, which kicked off the Fifth Circuit's line of cases, involved a "takings" claim against the IRS.

The Fifth Circuit decision in *Sammons* involved a "takings claim" against the Treasury Department after Fannie Mae and Freddie Mac were put into conservatorship, and the Treasury Department purchased $1 billion of preferred stock in each entity and then in 2012, the FHFA and the Treasury amended the stock-purchase agreement to change the dividend to one hundred percent of the current and future profits of the enterprises diluting Sammons noncumulative preferred shares.

The EPA claim at bar is neither of these.

Moreover, like the FCRA, and unlike the Fifth Amendment takings provisions at issue in *Wilkerson*, both The FLSA and the EPA contain their own judicial remedies.

By FLSA's specific terms, cases *may be heard in any court, state or federal*.

These protections extend, inter alia, to "any individual employed by the Government of the United States" in any executive agency, unit of the judicial branch or as a civilian in the military. See 29 U.S.C. § 203(e)(2)(A).

The Equal Pay Act/FLSA remedy provisions are as follows:

INJUNCTION PROCEEDINGS

SEC. 217 *[Section 17]*

*The districts courts,* together with the United States District Court for the District of the Canal Zone, the District Court of the Virgin Islands, and the District Court of Guam shall have jurisdiction, for cause shown, t*o restrain violations of section 215 [section 15] of this title*, *including in the case of violations of section 215(a)(2) of this title* the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter (except sums which

employees are barred from recovering, at the time of the commencement of the action to restrain the violations, by virtue of the provisions of section 255 of this title *[section 6 of the Portal-to-Portal Act of 1947]*. Emphasis supplied.

PENALTIES

SEC. 216 *[Section 16]*

(a) Fines and imprisonment

Any person who willfully violates any of the provisions of section 215 *[section 15]* of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection.

(b) Damages; right of action; attorney's fees and costs; termination of right of action

Any employer who violates the provisions of section 206 *[section 6]* or section 207 *[section 7]* of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) *[section 15(a)(3)]* of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) *[section 15(a)(3)]* of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. ***An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any <u>Federal or State court of competent jurisdiction</u> by any one or more employees for and in behalf of himself or themselves and other employees similarly situated***. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 *[section 17]* of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 *[section 6]* or section 207 *[section 7]* of this title by an employer liable therefor[*sic*] under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) *[section 15(a)(3)]* of this title.

(c) Payment of wages and compensation; waiver of claims; actions by the Secretary; limitation of actions

….

**The Secretary may bring an action in any court of competent jurisdiction** to recover the amount of the unpaid minimum wages or overtime compensation and an equal amount as liquidated damages.

The right provided by subsection (b) of this section to bring an action by or on behalf of any employee to recover the liability specified in the first sentence of such subsection and of any employee to become a party plaintiff to any such action shall terminate upon the filing of a complaint by the Secretary in an action under this subsection in which a recovery is sought of unpaid minimum wages or unpaid overtime compensation under sections 206 and 207 *[sections 6 and 7]* of this title or liquidated or other damages provided by this subsection owing to such employee by an employer liable under the provisions of subsection (b) of this section, unless such action is dismissed without prejudice on motion of the Secretary. Any sums thus recovered by the Secretary of Labor on behalf of an employee pursuant to this subsection shall be held in a special deposit account and shall be paid, on order of the Secretary of Labor, directly to the employee or employees affected. Any such sums not paid to an employee because of inability to do so within a period of three years shall be covered into the Treasury of the United States as miscellaneous receipts. In determining when an action is commenced by the Secretary of Labor under this subsection for the purposes of the statutes of limitations provided in section 255(a) of this title *[section 6(a) of the Portal-to-Portal Act of 1947]*, it shall be considered to be commenced in the case of any individual claimant on the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint, or if his name did not so appear, on the subsequent date on which his name is added as a party plaintiff in such action.

(d) Savings provisions

In any action or proceeding commenced prior to, on, or after August 8, 1956 *[the date of enactment of this subsection]*, no employer shall be subject to any liability or punishment under this chapter or the Portal-to-Portal Act of 1947 [29 U.S.C. 251 et seq.] on account of his failure to comply with any provision or provisions of this chapter or such Act (1) with respect to work heretofore or hereafter performed in a workplace to which the exemption in section 213(f) *[section 13(f)]* of this title is applicable, (2) with respect to work performed in Guam, the Canal Zone or Wake Island before the effective date of this amendment of subsection (d), or (3) with respect to work performed in a possession named in section 206(a)(3) *[section 6(a)(3)]* of this title at any time prior to the establishment by the Secretary, as provided therein, of a minimum wage rate applicable to such work.

(e)(1)(A) Any person who violates the provisions of sections 212 or 213(c) *[sections 12 or 13(c)]* of this title, relating to child labor, or any regulation issued pursuant to such sections, shall be subject to a civil penalty of not to exceed—

(i) $11,000 for each employee who was the subject of such a violation; or

(ii) $50,000 with regard to each such violation that causes the death or serious injury of any employee under the age of 18 years, which penalty may be doubled where the violation is a repeated or willful violation.

(B) For purposes of subparagraph (A), the term "serious injury" means—

(i) permanent loss or substantial impairment of one of the senses (sight, hearing, taste, smell, tactile sensation).

(ii) permanent loss or substantial impairment of the function of a bodily member, organ, or mental faculty, including the loss of all or part of an arm, leg, foot, hand or other body part; or

(iii) permanent paralysis or substantial impairment that causes loss of movement or mobility of an arm, leg, foot, hand or other body part.

(2) Any person who repeatedly or willfully violates section 206 or 207 *[section 6 or 7]*, relating to wages, shall be subject to a civil penalty not to exceed $1,100 for each such violation.

(3) In determining the amount of any penalty under this subsection, the appropriateness of such penalty to the size of the business of the person charged and the gravity of the violation shall be considered. The amount of any penalty under this subsection, when finally determined, may be-

(A) deducted from any sums owing by the United States to the person charged.

(B) recovered in a civil action brought by the Secretary *in any court of competent jurisdiction*, in which litigation the Secretary shall be represented by the Solicitor of Labor; or

(C) ordered by the court, in an action brought for a violation of section 215(a)(4) *[section 15(a)(4)]* of this title or a repeated or willful violation of section 215(a)(2) *[section 15(a)(2)]* of this title, to be paid to the Secretary.

(4) Any administrative determination by the Secretary of the amount of any penalty under this subsection shall be final, unless within 15 days after receipt of notice thereof by certified mail the person charged with the violation takes exception to the determination that the violations for which the penalty is imposed occurred, in which event final determination of the penalty shall be made in an administrative proceeding after opportunity for hearing in accordance with section 554 of Title 5 *[Administrative Procedure Act]*, and regulations to be promulgated by the Secretary.

(5) Except for civil penalties collected for violations of section 212 *[section 12]* of this title, sums collected as penalties pursuant to this section shall be applied toward reimbursement of the costs of determining the violations and assessing and collecting such penalties, in accordance with the provision of section 9a of Title 29 *[An Act to authorize the Department of Labor to make special statistical studies upon payment of the cost thereof and for other purposes]*. Civil penalties collected for violations of section 212 *[section 12]* of this title shall be deposited in the general fund of the Treasury.

This set of judicial remedies makes clear that the district courts have jurisdiction over the EPA injunctive relief claims.

Moreover, a federal employee under this language, the plaintiff may bring a suit for money damages in "any court of competent jurisdiction."

"Any court of competent jurisdiction" based on *Bormes*, includes an "Article III district court." Moreover, Dr. Metzinger's suit includes a request for injunctive and declaratory relief. Rec.doc. 1.p.3, for which a district court is specifically cited.

## II APPLYING 28 USC 1500

The Federal court of claims does NOT have jurisdiction of a suit by a federal employee against her employer the United States when that plaintiff has pending in any other court or process a suit against a person in which the person was acting or professing to act under United States Authority.

28 U.S. Code § 1500.Pendency of claims in other courts states as follows

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has *pending* in any other court any suit *or process against the United States* or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

(June 25, 1948, ch. 646, 62 Stat. 942; Pub. L. 97–164, title I, § 133(e)(1), Apr. 2, 1982, 96 Stat. 40; Pub. L. 102–572, title IX, § 902(a)(1), Oct. 29, 1992, 106 Stat. 4516.)

The two prongs of the statute are the "same claim prong" and the "pending prong."

The VA filed a Motion to Dismiss the Title VII suit before the EEOC on the grounds that the EPA claim is essentially "the same claim.". The VA prevailed, before the Agency AG which is how a right to sue letter was issued and federal lawsuit no. 20CV 0599 was filed. In that motion the VA pointed out that whereas 1) under 29 U.S.C. 1620.27 (a) any violation of the Equal Pay Act is also a violation of title VII even though Title VII covers types of wage discrimination not

actionable under the EPA, .2) therefore, an act or practice of an employer or labor organization that is not a violation of the EPA may nevertheless be a violation of title VII. And 3) the retaliation complaints fall under both the EPA and Title VII. Therefore, the VA argued that Dr. Metzinger's retaliation claims related to her FY16 and FY 2017 performance evaluations, which are currently pending in the title VII Complaint are also now pending before Federal Court in the EPA complaint and the compensation claims are "pending" in federal court. Based on that argument, the VA obtained a procedural dismissal of the Title VII claims, Rec. doc. 1-2 in 20 CA 0599, leading to the issuance by the EEOC of a right to sue letter (doc. 1-1) based on 29 C.F.R. § 1614.407(b) and 29 C.F.R. § 1614.107(a)(3) (provide that a complaint shall be dismissed that is the basis of a pending civil action in a United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint.).

The VA additionally argued that failing to dismiss any or all issues in the Title VII complaint that was then pending before the EEOC would result in "unnecessary fragmentation of Complainant's claim."

Consequently, the mover, VA, has made allegations and taken a position resulting in a procedural dismissal, that precisely fits this situation Section 1500 addressed – both the "same claim" prong and the "pending" prong of Section 1500.

Given that The VA filed an Answer to the 0599 suit (doc 21) and in affirmative defenses has essentially stated that the VA was acting under the authority of the United States and awarded pay under the lawful application of a merit based, seniority based system and system which measures earnings by quantity or quality of production, it would appear that the VA position is that all of the elements of 28 USC 1500 are met.

The Court of Claims does not and would not have jurisdiction over this case, under the position the VA has firmly taken and the resulting Final Order and right to sue letter.

Order of Filing Has No Relevance

Both the EPA claim and the Title VII claim were originally within Dr. Metzinger's EEOC charges. However, the EPA does not require exhaustion of administrative remedies and Dr. Metzinger was within her rights when she filed the EPA lawsuit in 2019. Although the EPA lawsuit was filed first, that does not preclude the application of Section 1500.

In *Tecon* the United States appeared to hold *in dicta* that the order of filing should be considered when determining the application of Section 1500. However, the United States subsequent Supreme Court's decision in *Tohono* renders the *Tecon* order-of-filing rule obsolete. *See Tohono*, 131 S. Ct. at 1729-30 (observing that *Tecon* "left [Section 1500] without meaningful force," and that the United States Court of Appeals for the Federal Circuit "was wrong to [adhere to the order of filing rule and] allow its precedent to suppress the statute's aims").

Even if the *Tohono* criticism of *Tecon* itself was *dicta*, the United States Court of Appeals for the Federal Circuit has instructed the district courts to follow the United States Supreme Court's guidance when it has spoken explicitly on a question of law. *See Ariad Pharms., Inc. v. Eli Lilly Co.*, 598 F.3d 1336, 1347 (Fed. Cir. 2010) ("[A] subordinate federal court . . . may not so easily dismiss such statements [by the United States Supreme Court] as dicta but [is] bound to follow them.").

**III TRANSFER, NOT DISMISSAL IS THE APPROPRIATE REMEDY IF THE COURT CONCLUDES THERE IS ABSENCE OF JURISDICTION IN THIS COURT.**

If this Court still concludes that the Federal Court of Claims does have jurisdiction over this Federal Court action by a federal employee, based on some theory and concluding that Section 1500 does not apply, then dismissal is STILL NOT proper.

The Court would be restricted to a transfer of the EPA lawsuit (No. 10614) to the federal court of claims pursuant to the Transfer Act. It may not dismiss. By FLSA's specific terms, cases *may be heard in any court, state or federal*. These protections extend, inter alia, to "any individual employed by the Government of the United States" in any executive agency, unit of the judicial branch or as a civilian in the military. See 29 U.S.C. § 203(e)(2)(A). No. 10614 has original jurisdiction in the District Court, because Plaintiff's EPA claim falls within 28 U.S.C. § 1331 and venue is proper in the District Court under 28 U.S.C. § 1391(e)(1).7.

Transfer, rather than a dismissal, if this Court concluded the Court of Claims is the right place to be, is  required as well as being in the interest of justice, because Plaintiff's EPA claim is "nonfrivolous and as such should be decided on the merits." *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987)).

28 U.S. Code § 1631.Transfer to cure want of jurisdiction states as follows:

> Whenever a civil action is filed in a court as defined in <u>section 610 of this title</u> [4] or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court *shall*, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

---

[4] 8 U.S. Code § 610.Courts defined

As used in this chapter the word "<u>courts</u>" includes the <u>courts</u> of appeals and district <u>courts</u> of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade.

(June 25, 1948, ch. 646, <u>62 Stat. 915</u>; Oct. 31, 1951, ch. 655, § 44, <u>65 Stat. 725</u>; <u>Pub. L. 85–508, § 12(e)</u>, July 7, 1958, <u>72 Stat. 348</u>; <u>Pub. L. 95–598, title II, § 226</u>, Nov. 6, 1978, <u>92 Stat. 2665</u>; <u>Pub. L. 96–417, title V, § 501(15)</u>, Oct. 10, 1980, <u>94 Stat. 1742</u>; <u>Pub. L. 97–164, title I, § 120(a)</u>, Apr. 2, 1982, <u>96 Stat. 33</u>; <u>Pub. L. 102–572, title IX, § 902(b)(1)</u>, Oct. 29, 1992, <u>106 Stat. 4516</u>.)

Should the Court conclude that No. 19 CV 10649 is filed in a court of without jurisdiction, which plaintiff disputes, it should be transferred not dismissed.

**CONCLUSION**

For the reasons set forth above, namely, *1)*the  Tucker Act in light of the  Supreme Court's 2012 Bormes decision does not apply to deprive this Court of Jurisdiction, *2)* 28 U.S. Code § 1500 Claims *Pending in Other Courts*, does deprive the Federal Court of Claims of  jurisdiction, and *3)* the Transfer Act requires denial of the Motion requires rejection and denial of the Motion to Dismiss in favor of transfer if the Court should disagree.

Respectfully Submitted,

BY: */s/Marie Riccio*
\MARIE RICCIO (#11214) LAW
OFFICES OF MARIE RICCIO
700 CAMP STREET
NEW ORLEANS, LOUISIANA
70130TELEPHONE (504) 528-9500 EXT
239
FACSIMILE (206) 457-1945
EMAIL: marie@officericcio.com
Counsel for Petitioners

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 31 day of March 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system and service will be made as required by law.

*/s/ Marie Riccio*

Marie Riccio